ILLINOIS CENTRAL RAILROAD COMPANY *v.* ROSA R. BETHEA
ET AL.

## [40 South. Rep., 813.]

1. RAILROADS. *Crossings. Rules of company. Evidence.*

The admission in evidence of a rule of the railroad company providing that crews of switching trains should protect crossings does not constitute reversible error in a suit for the death of a person, killed by a passenger train while crossing the railroad tracks on a public highway, signals having been given him as he approached the tracks by one of the crew of a freight train then switching at the crossing, and the testimony being in conflict as to whether the signals were warnings of the approach of the passenger train or invitations to cross the tracks, where the trial court instructed the jury to find for the defendant if decedent was signaled not to go upon the tracks or the signals were given to warn him of the approaching train and he misconstrued or ignored them.

2. SAME. *Proximate cause. Contributory negligence. Instructions.*

In such case the questions of proximate cause and contributory negligence are fairly submitted to the jury by instructions to the effect that if decedent by a careful use of his eyes or ears could or should have seen or heard the train before he reached the track, but voluntarily chose a dangerous way when there was a safe one, then plaintiff could not recover ; that the train was entitled to the right of way ; that decedent was not excused from the duty of looking and listening even if signals were not given him and the train was late, running at a high rate of speed, and reached the crossing at an unusual time.

3. SAME.

The negligence of a plaintiff will not preclude his recovery, his case being otherwise made out, unless it proximately caused or contributed to the injury.

4. SAME.

If a traveler approaching a railroad crossing on a frequented thoroughfare in a populous community be signaled by a flagman of the railroad company to proceed across the tracks, and in so doing is struck by a train, giving no signals of its approach and running at

a high rate of speed, the railroad company cannot escape liability for the injury so inflicted on the idea that the negligence of the operatives of the train was not the proximate cause of the injury.

FROM the circuit court of Pike county.

HON. MOYSE H. WILKINSON, Judge.

Mrs. Bethea and others, the appellees, the widow and children of J. W. Bethea, deceased, were plaintiffs in the court below; the railroad company, the appellant, was defendant there. From a judgment in plaintiffs' favor the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

Among the divers errors assigned by the appellant in the supreme court were the following:

The refusal of the court to grant a peremptory instruction for the defendant.

The admission in evidence of a rule of the railroad company which is as follows: "While switching over public crossings at grade, one of the crew must protect the crossing unless other provisions are made."

The refusal of the following instruction asked by the railroad company: "(3) The court instructs the jury for the defendant: Should the jury believe from the evidence that the railroad company failed to signal for the crossing, and was thereby negligent and in any way contributed to the accident, and that Bethea failed to exercise due care and caution.in keeping a lookout for the approaching train, and that both he and the railroad company were guilty. of negligence, and that the death was due to the negligence of both, then no recovery can be had in this case and the jury should find for the defendant."

*Mayes & Longstreet,* and *J. M. Dickinson,* for appellant.

.The court below erred in refusing the peremptory instruction requested by defendant.

The testimony shows that the deceased had lived for years

at Fernwood, and was perfectly familiar with the crossing in question and its surrounding conditions; that in approaching the crossing from the west side, on which the residence of the deceased was located, the view up the railroad was more or less obstructed by bushes, growing corn, etc.

It was half-past eight o'clock on a morning in June, and consequently fully light, and people had for some time been at their respective places of business.

Bethea's residence was on the west side of the track, and his office was in the building of the Fernwood Lumber Co., on the east side. It was his daily habit to go more than once a day backward and forward between the two. On the morning in question he was seen by several parties to be approaching the crossing in his buggy from the direction of his residence. He was driving a horse described as somewhat spirited, but not afraid of trains, and it is nowhere claimed that any restiveness of his horse entered into this catastrophe.

We have all the conditions which by repeated decisions of this court make out a case of contributory negligence of the party injured: A familiar ground; an alert man in the full possession of all his physical senses; the broad daylight; an easy approach (whether the view is party obstructed or not, being immaterial as we shall hereafter show, except that if obstructed there was all the more demand for extra vigilance); in driving on the track by one in full control of his horse directly in front of a coming train, under conditions when it is perfectly manifest that the exercise of that vigilance in looking and listening which the action called for would have prevented the casualty.

Unless the previous adjudications of this court about injuries received at public crossings are to be ignored and the law overturned, the peremptory instruction asked by the defense should have been given.

Apparently the court below declined to give that instruction

on the theory that Bethea received an invitation from the switchman, Simmons, to cross, and that such invitation took the case out of the ordinary rule; that he was entitled to rely upon the same, and to cross without diligently looking and listening for an approaching train. But if that was the court's theory in refusing this instruction, it was a mistaken one and is not the law.

The peremptory instruction for the defense should have been given although such a signal was made, if made; and that for the reason that the signal alleged is not even pretended to have been given by a trainman of the train which did the injury, and for the further simple reason that the conditions were such as that the exercise of any proper diligence in looking or listening would have shown to the deceased the approaching train in time to stop before going on the track. *R. R. Co.* v. *Jobe,* 71 Miss., 734 (s.c., 15 South. Rep., 129); *R. R.* v. *McLeod,* 78 Miss., 334 (s.c., 29 South. Rep., 76).

It is manifest that the measure of responsibility of the company for any blunder of Simmons at the crossing, if there was any, is limited to an injury inflicted at the crossing by the train of whose crew Simmons was a member. It was as to that train, and that train only, that he was charged with the duty of seeing that the crossing was clear; and his train was not only a different one, but was a different track, and was in fact concerned with a different crossing, and it did not inflict the injury.

The plaintiffs' instruction also assumes, without any evidence whatever of a legal nature, that Bethea "was induced to attempt to cross by such invitation." The extent of the evidence is, granting that Simmons' act can be taken as such an invitation, that Bethea was so situated as that he could see it. There is no evidence whatever that he did see it; there is none that he acted upon it; there is none that it had any influence in determining his course of conduct; the assumption that it did is all pure guess work and speculation, and for this

reason the instruction is subject to the condemnation of the rule expounded in the case of *Railroad Co.* v. *Cathey,* 70 Miss., 332 (s.c., 12 South. Rep., 253), that "possibilities will not sustain a verdict"; followed in *Railroad Co.* v. *Woolley,* 77 Miss., 927, 944 (s.c., 28 South. Rep., 26); *Brister* v. *Illinois, etc., R. R. Co.,* 84 Miss., 33 (s.c., 36 South. Rep., 142).

The fact that such a signal was given, even when given by a trainman of the train which offended, does not relieve the party approaching the crossing from the obligation of diligence. It is not the determinative fact; it is only an element to be taken into consideration in determining the ultimate fact as to whether the proper degree of diligence was or was not observed. Signal or no signal, it is still the duty of every party crossing to make diligent use of his senses of sight and hearing to detect an approaching train. See the following authorities: 3 Elliott on Railroads, sec. 1166; *Denver, etc., Ry. Co.* v. *Gustofson* (Colo.), 41 Pac. Rep., 505; *Berry* v. *Pennsylvania R. R. Co.,* 48 N. J. Law, 141; *Van Riper* v. *Railroad Co.,* 59 Atl. Rep., 26; *Romeo* v. *Railroad Co.,* 87 Me., 540; *Maryland Railroad Co.* v. *Newbern,* 62 Md., 391; *Shultz* v. *Railroad Co.* (N. Y.), 69 Hun., 515.

The court below erred in admitting in evidence over the objection of defendant the company's rule in these words: "While switching over public crossings at grade, one of the crew must protect the crossing unless other provisions are made."

The rule was employed for a purpose not contemplated by it, and not embraced within its terms; and by introducing it the railroad company was subjected to liability in respect to the management of train No. 1 for a person who did not belong to that train and was in no wise concerned either under the rules of the company or under the law of the land with its operation.

In this connection, especially, we repeat our proposition already advanced that the court erred in refusing to give the

fourteenth and seventeenth instructions requested by defendant. The fact, if it was a fact, that in approaching the crossing Bethea directed his attention to the freight train which occupied the easternmost or far track from him, did not exonerate him from the obligation to attend to the westernmost or nearer track, which he was immediately about to cross, before going upon it.  Undertaking to cross both tracks, it was his duty to watch both tracks and to employ his senses of sight and hearing to see that both tracks were clear.  The fact that the far track was being used by a freight train could not, and did not, exempt him from the obligation to see that the near track was clear before he drove upon it.

The court below erred in refusing the third instruction asked by the defendant.

It seems clear that the defendant was entitled to have this instruction given.  It was an expression in its simplest form of the doctrine of contributory negligence, the point being that the plaintiff was not entitled to recover if "both he and the railroad company were guilty of negligence, and that the death was due to the negligence of both."  Certainly that is the law. . It is the central idea of the doctrine of contributory negligence. We can only conjecture that the court became confused in some way between that instruction and that other form of instruction, which would have been properly refused, in which the defendant would try to exonerate himself by showing that the injury was caused by the concurrent negligence of some third party.

Obviously there are two forms in which the question of concurrent negligence might come into a case: First, where the defendant does undertake to set up the concurrent negligence of a third party in order to exonerate himself, in which case an instruction to that effect would, speaking broadly, be properly refused, because it is no exoneration—it merely makes out a case of joint liability; and, secondly, if the negligence is con-

current between the plaintiff and the defendant, then the plaintiff cannot recover, because that is contributory negligence. And such was the instruction asked and improperly refused in this instance.

The law on the subject is well settled. 7 Am. & Eng. Ency. Law, 371; *Woodell* v. *W. Va. Imp. Co.,* 38 W. Va., 40; Cooley on Torts, 674; Pierce on Railroads, 323; 17 Am. & Eng. Ency. Law, 372; *Pa. R. R. Co.* v. *Aspell,* 23 Pa. St., 147; *Ruter* v. *Toy,* 46 Iowa, 132; *Sims* v. *So. Car. R. R. Co.,* 26 So. Car., 490.

*Green & Green,* for appellees.

Bethea was not guilty of contributory negligence. The jury, drawn from all walks of life, passed upon this question under the most liberal instructions for the appellant, and after reviewing the witnesses and the whole transaction found that the appellee's intestate was not guilty of contributory negligence. As so aptly said by Mr. Justice TRULY in *Railroad* v. *Humphrey,* 83 Miss., 735 (s.c., 36 South. Rep., 154), "contributory negligence is simply want of ordinary care in the situation." *Railroad Co.* v. *Jones,* 73 Miss., 110 (s.c., 19 South. Rep., 91); *Vicksburg, etc., R. Co.* v. *McGowan,* 62 Miss., 682. In *Bell* v. *So. Railway Co.,* 30 South. Rep., 821, WHITFIELD, C. J., says: "Whether the company was guilty of negligence, and whether he himself was guilty of contributory negligence, were questions of fact which a jury should have passed upon. So many questions are integrated usually into the solution of the question of negligence—it is so necessary to carefully examine all the circumstances making up the situation in each case, that it must be a rare case of negligence which the court should take from the jury." And this statement is quoted and approved by CALHOON, J., in *Stevens* v. *Railroad Co.,* 81 Miss., 195 (s.c., 32 South. Rep., 311), and he adds in the same connection: "A judge at his desk, whose duties seclude him very

much and train him to habits of careful deliberation, is not nearly so competent to determine what a man of usual and ordinary prudence might do under given circumstances as a jury from the body of the people. Contributory negligence as a defense must be obvious to all reasonable minds to warrant its announcement as matter of law . . . "

Says Beach in sec. 450 of his work on Contributory Negligence: "In general it cannot be doubted that the question of negligence is a question of fact and not of law. Whenever there is any doubt as to the facts, it is the province of the jury to determine the question; or whenever there may be a reasonable difference of opinion as to the inferences and conclusions from the facts, it is likewise a question for the jury. It belongs to the jury not only to weigh and to find upon the questions of facts, but to draw conclusions as well alike from disputed and undisputed facts. *Barden* v. *Railroad,* 121 Mass., 426; *Elliott on Railroads,* 1633."

Bethea is shown to have stopped at the open gate about 61 feet from the track, where he could not see up the same, and to have slacked up about 37 feet and there waited momentarily, at least until he received a signal from the flagman whom the appellant had stationed there for the purpose of flagging. When the flagman gave the signal, being on the track where he could see if he had looked, and thereby invited and induced Bethea to come on in reliance upon the signal so given, this was the act of the company. Its word was outstanding to one who could not guard himself that it was safe to come; he was invited to do so, and now, forsooth, the pretext is put up that it was contributory negligence to do that which the appellant invited him to do—that which from the position where he was he could not tell was dangerous, and which apparently was. When by reliance upon the assurance decedent was killed by the negligence of the company, they have the temerity to complain that reliance upon the invitation of the company, in a

matter wherein he had a right to rely, was contributory negligence; that these assurances were such that an ordinary prudent man would not act on them.    But we insist that such is not the case.    *Railroad Co.* v. *Thompson*, 64 Miss., 596 (s.c., 1 South. Rep., 840); *Railroad Company* v. *Crominarity*, 86 Miss., 464 (s.c., 38 South. Rep., 633); *Sweeny* v. *Railroad Co.*, 10 Allen, 368; *Fulmer* v. *Railroad Co.*, 68 Miss., 355 (s.c., 8 South. Rep., 517); *Summers* v. *Railroad Co.*, 68 Miss., 566 (s.c., 10 South. Rep., 63); *Railroad Co.* v. *Mitchell*, 52 Miss., 812; *Railroad Company* v. *Phillips*, 70 Miss., 16 (s.c., 11 South. Rep., 602); *Railroad Company* v. *French*, 69 Miss., 125 (s.c., 12 South. Rep., 338); *Railroad Company* v. *Hirsch*, 69 Miss., 126 (s.c., 13 South. Rep., 244); *Railway Co.* v. *Lowe*, 73 Miss., 203 (s.c., 19 South. Rep., 96); *Murdoch* v. *Railroad Co.*, 77 Miss., 487 (s.c., 29 South. Rep., 25); *Jobe* v. *Railroad Co.*, 71 Miss., 734 (s.c., 15 South. Rep., 129); *Winterton* v. *Railroad Co.*, 73 Miss., 381 (s.c., 20 South. Rep., 157); *Railroad Co.* v. *McLeod*, 78 Miss., 340 (s.c., 29 South. Rep., 76); *Bell* v. *Railroad Co.*, 30 South. Rep., 821; *Railroad Company* v. *Crominarity*, 86 Miss., 464 (s.c., 38 South. Rep., 633); *Railroad* v. *Bryant*, 95 Va., 212; *Bunckley* · v. *Jones*, 79 Miss., 6 (s.c., 29 South. Rep., 1000); *Evans* v. *Railroad Co.*, 14 L. R. A., 223; *Richmond* v. *Chicago, etc., R. Co.*, 87 Mich., 374; 7 Am. & Eng. Ency. Law (2d ed.), 2; Beach on Con. Neg., sec. 36; *Langan* v. *Railroad Co.*, 72 Mo., 398; *Fowler* v. *Railroad Co.*, 18 W. Va., 585; *Railroad Co.* v. *Johnson*, 77 Pac. Rep., 578; *Richmond* v. *Railroad Co.*, 87 Mich., 379; *Railroad Co.* v. *Hutchinson*, 120 Ill., 593; *Railroad Co.* v. *Swan*, 37 Ill., 86; *Railroad Co.* v. *McGrath*, 203 Ill., 511; *Gray* v. *Railroad Co.*, 78 N. Y. Sup., 655; *Railroad Co.* v. *Votaw*, 81 S. W. Rep., 133; *Railroad Co.* v. *Neubacher*, 16 Ind., 38; *Buchanan* v. *Railroad Co.*, 75 Iowa, 393; *Smith* v. *Railroad*, 177 N. Y., 230; *Railroad Co.* v. *Anderson*, 109 Ala., 299; *Robbins* v. *Railroad Co.*, 161 Mass.,

145; *Tobias* v. *Railroad Co.,* 103 Mich., 330; *Hinkle* v. *Railroad Co.,* 109 N. C., 472; *Railroad* v. *Hinds,* 56 Kan., 759; *McBride* v. *Railroad Co.,* 19 Ore., 64; *Railroad* v. *McLeod,* 78 Miss., 334 (s.c., 29 South. Rep., 76); *Bunckley* v. *Jones,* 79 Miss., 6 (s.c., 29 South. Rep., 1000); *Jamison* v. *Railroad Co.,* 63 Miss., 37; *Romeo* v. *Railroad Co.,* 87 Me., 540; *Van Riper* v. *Railroad Co.,* 59 Atl. Rep., 26; *Railway Co.* v. *Phillips,* 70 Miss., 18 (s.c., 11 South. Rep., 602); *French* v. *Sale,* 63 Miss., 390; *Dunlap* v. *Hearn,* 37 Miss., 471; *Brister* v. *Railroad Co.,* 84 Miss., 39 (s.c., 36 South. Rep., 142); *Burt* v. *State,* 72 Miss., 408 (s.c., 16 South. Rep., 342); *Thompson* v. *State,* 73 Miss., 586 (s.c., 19 South. Rep., 204); *Cooper* v. *Railroad Co.,* 68 Miss., 370 (s.c., 8 South. Rep., 747); *Smith* v. *Railroad Co.,* 177 N. Y., 230; *Silensky* v. *Railroad Co.,* 94 N. W. Rep., 272; *Railroad Co.* v. *Mason,* 51 Miss., 234; *Railroad Co.* v. *Patton,* 31 Miss., 193; *Mabry* v. *State,* 71 Miss., 722 (s.c., 14 South. Rep., 267); *Moyers* v. *Insurance,* 64 Miss., 50 (s.c., 8 South. Rep., 205); *Moye* v. *Herndon,* 30 Miss., 110; *Railroad Co.* v. *McGowen,* 62 Miss., 695; *Hasie* v. *Railroad Co.,* 78 Miss., 417 (s.c., 28 South. Rep., 941); *Christian* v. *Railroad Co.,* 12 South. Rep., 710; *Frink* v. *Potter,* 17 Ill., 406; *Railroad Co.* v. *Hill,* 7 Ind. App., 255; *Moulton* v. *Aldrich,* 28 Kan., 300; 7 Am. & Eng. Ency. Law (2d ed.), 382; *Railroad Co.* v. *Patton,* 31 Miss., 193; *Railroad Co.* v. *Watly,* 69 Miss., 151 (s.c., 13 South. Rep., 825); *Railroad Co.* v. *Thompson,* 64 Miss., 593 (s.c., 1 South. Rep., 840); 7 Am. & Eng. Ency. Law (2d ed.), 437; *Railroad Co.* v. *Clough,* 134 Ill., 596.

Argued orally by *Edward Moyes,* for appellant, and by *Marcellus Green,* for appellees.

TRULY, J., delivered the opinion of the court.

The facts as determined by the finding of the jury are these: On the morning of the accident, at the populous, but unin-

corporated, village of Fernwood, J. W. Bethea was struck and
killed at a public crossing by train No. 1, a vestibuled or can-
non-ball train of appellant company. At the time the train
causing the death was late and running fifty to sixty miles an
hour, and crossed the highway without the ringing of a bell
or the blowing of a whistle. Bethea drove his buggy over the
public highway, in obedience to a signal of some character made
by the flagman of a local freight train, which was then engaged
in switching at Fernwood. The question presented by the
record, and the only important question in our opinion, is
whether, under the circumstances, Bethea was guilty of negli-
gence proximately contributing to his own injury. That the
railroad company was guilty of negligence, in so far, at least,
as applies to the employes in charge of the train causing the
injury, is manifest. In truth, upon this point, there is no con-
flict of testimony worthy of any consideration. That it was
the duty of the flagman of the local freight train to "protect
the crossing" under the rules of the company, is perfectly plain.
The train to which he was attached was then engaged in switch-
ing, and had been for some time previously. In making the
switching necessary for the prosecution of its business as a
local freight train, the train repeatedly crossed the public high-
way, obstructing travel and passage. At the time of the acci-
dent the work of the local train had not been completed. There
still remained, according to the testimony of the employes, some
switching to be done before the train could leave the station. It
appears probable, at least, that the local freight train cleared the
crossing for the purpose of permitting Bethea to drive across.
If this be not true, there is no explanation of why the conduc-
tor, engineer, and flagman of the local train should have sus-
pended their switching operations before they were concluded.
However this may be, and for whatever purpose the temporary
suspension of work was made, certain it is that Bethea did
not drive on the track or attempt to pass over the crossing

until the engine of the local freight train had pulled north of and cleared the crossing and had come to a full stop. Until the time when the crossing was perfectly clear of the local train, and until the engineer of that train had stopped his engine, Bethea had made no effort to drive on the railroad track; but, according to some of the testimony, had himself come to a full stop. At this time, and under these circumstances, according to the preponderance of the testimony, the flagman, who was in charge of the crossing for the purpose of warning and protecting travelers, gave a signal to his engineer to bring his engine to a stop. When the engineer of the local train obeyed this signal, the flagman then made another signal, and in obedience to that signal Bethea drove upon the track, and was struck, without warning, by the cannon-ball train. There is considerable conflict as to the exact character and description of the signal given by the flagman. He himself denies giving any signal. Some witnesses testify that the signal given was one of warning. Others testify, with equal directness, that it was one of invitation, conveying the idea that the crossing was clear and safe. It was at least a question of doubtful fact, and as such was submitted to the jury under proper instructions upon each side.

We think the assignment of error based upon the admission of the rule defining the duties of the flagman of a switching train regarding a public crossing untenable. It manifestly appears that the train was then engaged in switching; that the flagman was then engaged in guarding the crossing, and was operating under the rule in question. But, even if this were not true, the admission of the rule would not constitute reversible error. The flagman was an employe of the appellant. He was acting as a watch. He did make a signal, and that signal Bethea construed, the jury found rightfully, as an invitation to cross—as an assurance of safety. It is useless to contend that a flagman in charge of a crossing, who signals a traveler

to pass over, must be considered as simply signifying the attitude of his own train, and not as evidencing the safety of the crossing generally. The reason why a flagman is kept at a crossing is not alone to protect travelers from his own train, but to prevent, by his watchfulness, the happening of accidents from the approach of any train whatsoever. Upon this point the appellant has no ground of complaint, because the instruction granted covering this phase of the case was extremely liberal. Instruction No. 9 charged the jury that if they believed that Bethea was signaled "not to drive across the track," or that signals were made "trying to warn him against the approaching train," and that for any reason Bethea "misconstrued the signal for one to cross the track, or that he ignored the signals," then the jury should find for the defendant. Upon this fair submission of the conflict in the evidence as to the character, effect, and purpose of the signal given, the jury solved the issue in favor of the appellee, deciding that the signal made was one, not of warning, but of invitation; not signifying danger, but promising safety. We cannot say that there was no evidence on which this conclusion could be based. On the contrary, the testimony of the witness Dread is direct on this point, while that of other witnesses is reasonably susceptible of like construction.

The nine instructions granted the appellant presented the divers theories of its defense in every legal phase. The jury were instructed that, if Bethea "by a careful and cautious use of his eyes or ears could and should have seen or heard train No. 1 before he reached the track at the crossing, then as a matter of law he did see or hear said train"; further, that if Bethea "voluntarily chose a dangerous way, when there was an obviously safe one which could have been chosen," in neither instance could there be a recovery for plaintiffs. The jury were further charged, by sundry instructions on behalf of appellant, that as between Bethea and the train "the train was

entitled to precedence and had the right of way," and even though "signals were not given and the train was running at a high rate of speed," and even though the train was late and passed at an unusual time, that none of these things relieved Bethea from the duty of looking and listening and using every reasonable precaution to protect himself, and that failure on his part in this regard would defeat recovery by the plaintiffs. So the question of what was the proximate cause of the injury, the defense of any lack of care and caution on the part of Bethea, and the defense of contributory negligence arising out of the conduct of Bethea, even though the employes of the railroad company were negligent in any of the several matters of alleged negligence placed in proof, were all fairly submitted to the consideration of the jury.

The instructions refused for the defendant were either attempts to impose limitations and ingraft modifications upon the general principles applicable to and controlling the several issues arising out of the evidence, or were upon the weight of the evidence, or were fully covered by the charges granted. The refusal of the third instruction is earnestly urged as constituting reversible error. We think not. The instruction is erroneous as written. It is not true that, when some degree of negligence by both parties combine to cause an injury, as a matter of law no recovery can under any circumstances be had. If in an accident both parties be guilty of negligence, then the question of what was the proximate cause of the injury is a question of fact, to be submitted to the decision of a jury. The defense of contributory negligence presupposes, and in the eye of the law concedes, the existence of negligence on the part of the party interposing the plea. One may be injured by his own negligence, when the other party is innocent of all negligence. In such state of case no recovery can be had, because the injury is attributable solely to the negligence of the party injured. So, again, the party causing the injury may be guilty

of negligence, and yet the party injured not be entitled to recover in a case where he, too, is guilty of negligence, and the negligence on his part directly contributes to the injury.    But it is also true that both parties to an accident may be guilty of negligence, and yet the party injured be entitled to recover.    It is not negligence in any degree that prevents a recovery, but such negligence as proximately contributes to or causes the injury.    The instruction under review does not measure up to this requirement of the law.    The refusal of the other instructions for the defendant was manifestly correct.    Nor do we think the instructions granted the appellees justly subject to the criticism attempted to be made upon them.    Considered from the point even of verbiage or correct phrasing, we think they stand the test.    Certain it is that they are substantially in approved forms which have heretofore been adopted by the courts and text-writers of accepted authority.    No instruction was granted appellees of which the converse was not embodied in some charge on behalf of appellant.

Taken as a whole, in view of all the surrounding conditions, we think the jury eminently warranted in deciding that the carelessness and want of ordinary regard for the rights of the public and disregard for the safety of travelers, evinced by the operatives upon train No. 1 in passing through a populous community and over a frequented thoroughfare, which the testimony shows was in constant use by travelers, without signaling and at a high rate of speed, was the proximate cause of the sad accident which terminated this useful life.    Had the employes in charge of train No. 1 been more solicitous for the welfare of pedestrians and travelers generally, and mindful of the possibility of inflicting injury or death, and given the warnings and signals of the approach of the train which the law requires, it is probable that the accident would not have occurred.    The fact that, after the engineer discovered the dangerous position of Bethea, he was powerless to do anything to prevent the accident,

does not alter the fact that the duty imposed by statute of sounding the signals was disregarded; or, had the flagman discharged his duty under the rules of securing the safety of travelers by guarding and watching over the crossing, Bethea might not have been brought into a place of danger. It is certainly time that some action was being taken to prevent the constant recurrence of accidents and fatalities at highway crossings, caused mainly by the failure of train operatives to comply with statutory requirements. It is to be hoped that this extremely sad occurrence, where the life of a useful citizen was sacrificed, will cause some plan to be devised whereby employes in charge of trains may be brought to a due regard for the rights and safety of the public and induced to pay more strict attention to those duties, made mandatory by the express language of the statute.

*The judgment is affirmed.*